Filed 10/22/21  In re G.G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re G.G. et al., Persons Coming Under the Juvenile Court Law. | C091237 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.B., <br><br> Defendant and Appellant. | (Super. Ct. No. STKJVDP20180000153) |

L.B., mother of the four minors (mother), appeals from orders of the juvenile court terminating her reunification services.  (Welf. & Inst. Code, §§ 366.21, subd. (f), 395.)[1]  Mother contends the juvenile court erred in finding that the San Joaquin County Human Services Agency (Agency) provided her and the minors with reasonable services tailored to their needs.  We will affirm the orders of the juvenile court.

BACKGROUND

In April 2018, the Agency filed a petition on behalf of G.G. (born 2002), S.G. (born 2006), E.G. (born 2007), and B.M. (born 2010), alleging that the minors came within the provision of section 300, subdivision (b), failure to protect; section 300,

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

subdivision (c), serious emotional damage; and section 300, subdivision (g), no provision for support.

On April 13, 2018, the Agency received a report that the minor B.M. was taken by mother to undergo a sexual assault exam. While residing in a room at a shelter due to homelessness, mother awoke that morning believing someone had entered their room and molested B.M. B.M. did not disclose any sexual abuse but did indicate some pain in her vaginal area and said it was "hard to walk." Mother told the shelter staff that B.M.'s pajamas were unzipped and her underwear removed. Security camera footage outside of mother's room did not show anyone else entering or leaving the room. Mother reported her belief that someone previously entered her room through vents and raped her three times.

A social worker interviewed B.M., who stated that she woke up without her pajamas and underwear and did not know how the items were removed. The minor did not remember anyone entering the room or inappropriately touching her. She explained that mother had told her she was raped and that mother often spoke about rape. Mother had previously said that S.G and E.G were raped and that people come out of the vents to hurt them. The minor added that mother often spoke about demons and witches and said demons were staring at her. The social worker also interviewed the minor's siblings, E.G., S.G., and G.G., who did not believe anything had happened to B.M. and expressed concerns about mother's erratic behavior. S.G. said she tried to tell mother that B.M. unzipped her own pajamas because "it was really hot in the room" and B.M. had not put any underwear on that night after her shower.

The social worker interviewed mother, who acknowledged the video footage showed no one going in or out of the room but claimed that the person came through the "ventilation system and vents in the ceiling." She stated that her prior allegation that E.G was molested was related to her own thoughts of suicide. She denied drug use but admitted she had bouts of depression and that her mother was diagnosed with

2

schizophrenia. The social worker was concerned that mother's unmet mental health problems were affecting the wellbeing of the minors. A Safety Plan was established which required a mental health assessment for mother.

At a May 1, 2018 detention hearing, the Agency recommended detaining the minors out of parental custody because of three prior substantiated referrals for emotional abuse and neglect in 2017 and 2018. The Agency informed the juvenile court that mother was not involved in any mental health treatment and was not taking any medication. The juvenile court allowed the minors to remain with mother as long as they remained at the shelter and mother received immediate mental health care. At a subsequent jurisdictional hearing, the Agency requested detention of the minors because mother continued to exhibit concerning behaviors and prevented the minors from contacting the social worker. Mother caused B.M to be in fear of "the devil coming to get her" and insisted that the minors' food was being drugged and refused to allow them to eat. The juvenile court noted the minors were still being subjected to emotional abuse, continued the matter, and ordered the parties to investigate.

At the May 24, 2018 continued jurisdictional hearing, the juvenile court ordered the minors detained from mother because of the continued deterioration. The juvenile court ordered supervised visits between mother and the minors. At the June 5, 2018 jurisdictional hearing, the juvenile court ordered mother to submit to a psychological evaluation in order to tailor services. The Agency advised that the psychological evaluation had not been completed because mother had not responded to the doctor's attempts to contact her for an appointment. The juvenile court advised mother to contact the social worker to assist her in making the appointment and transportation.

The Agency's October 4, 2018 disposition report showed that mother and the minors had weekly supervised visitation for one hour, with the exception of B.M., who refused to attend visits. The reunification case plan established for mother consisted of complying with court orders, maintaining stable housing, attending parenting education,

3

completing a psychological evaluation, and following the recommendations. Mother was assessed by Dr. Sidney Nelson at Scripps Psychological Associates. At the October 4, 2018 dispositional hearing, the juvenile court was advised that mother completed the psychological evaluation and it was recommended that she complete a medication evaluation with a psychologist and noted four areas of focus in individual counseling. Dr. Nelson diagnosed mother with "unspecified schizophrenia spectrum and other psychotic disorder and parent-child relational problem," and recommended a medication evaluation.

At the March 15, 2019 review hearing, mother argued there was a lack of reasonable services to minors and claimed her therapist was not provided with her psychological evaluation from Dr. Nelson. The juvenile court confirmed the psychological evaluation had been provided and ordered mother to sign a release of information to allow the Agency access to mental health records.

The May 15, 2019 status review report noted mother completed 20 individual counseling sessions at Central Valley Center for Community Advocacy (CVCCA). A referral to family counseling at CVCCA was set to begin after mother completed additional individual sessions. Mother's therapist reported that she missed her first two scheduled appointments and her referral for the additional sessions was thus placed on hold. The Agency remained concerned that mother did not interact with the minors during visitation, and mother cancelled or missed several of the scheduled visits. The Agency recommended providing mother with an additional six months of services to complete a medication evaluation, individual counseling sessions, and family therapy.

At the May 15, 2019 review hearing, the Agency advised the juvenile court about the intent to begin family counseling after mother completed additional sessions of individual counseling because the therapist did not believe mother was "ready to engage in meaningful family therapy." The Agency's status review report showed that mother began her additional therapy session on May 7, 2019 but missed two subsequent sessions.

4

She was transferred to a different therapist, who she failed to contact and later resumed therapy on August 20, 2019. The Agency recommended terminating reunification services to mother as to B.M., who did not wish to have visitation with mother. The Agency advised the juvenile court that mother was attending counseling sessions, but B.M refused to attend visitation with mother and wanted to remain with father M.

At the October 21, 2019 contested review hearing, the social worker testified that mother was diagnosed with schizophrenia and a psychotropic medication evaluation was recommended. Mother was repeatedly told where she needed to go for the medication evaluation and was also given the phone number, but she failed to follow through. The social worker testified that mother completed 30 sessions of counseling.

At the conclusion of testimony, the juvenile court noted that mother completed 30 sessions of counseling, was attempting to visit with G.G, S.G, and E.G., and that B.M was steadfast in her refusal to visit. The juvenile court said it was not yet appropriate to begin family therapy. Noting that mother had been given numerous opportunities to comply with the medication evaluation and had not done so, the juvenile court terminated reunification services to mother with B.M and ordered that no visitation occur. Mother's therapist reported that the family would not benefit from family therapy due to mother's "lack of progress with maintaining mental health stability and lack of follow through of understanding." Mother remained in denial about her mental illness, was not taking psychotropic medication, and maintained paranoid belief patterns. The therapist referred mother for further individual therapy because she "continued to present with distorted thinking patterns as well." The October 30, 2019 status review report noted mother reported that she completed the medication evaluation but failed to provide the Agency with any documentation. She was referred to a service to assist her in finding housing but instead chose to rent a room from a transitional living program. The Agency recommended terminating mother's services because she had not obtained suitable housing nor addressed concerns regarding her mental health.

At the October 30, 2019 contested review hearing, mother requested that she be provided with any referrals the Agency deemed necessary. The juvenile court advised mother to submit to a medication evaluation. Mother informed the juvenile court that an evaluation had been completed and the paperwork had been submitted to the social worker. The social worker confirmed that documentation had recently been received but not yet reviewed.

At the January 6 and January 7, 2020 contested review hearing, the social worker testified that, in August 2019, mother underwent an assessment with San Joaquin County Behavioral Health Services (BHS) for a medication evaluation for psychotropic medication. The social worker testified that the medication evaluations were done based on "the client's disclosures of what symptoms they are experiencing." Mother denied any paranoia, auditory, or visual hallucinations during the BHS evaluation. Based on mother's responses, BHS determined that her symptoms did not require medication and advised her to return for a re-evaluation if anything changed or worsened. The social worker encouraged mother to return to BHS for another medication evaluation. Family therapy was part of mother's reunification case plan but was pending the completion of her individual counseling. A report from Chest of Hope raised concerns that mother continued to suffer from delusions. The social worker testified the minors could not return to mother's care due to ongoing concerns regarding mother's mental health and not having suitable housing because she was not allowed to have the minors reside with her at Chest of Hope.

Mother testified that she went to BHS for a medication assessment and based on her responses, it was determined she did not qualify for any kind of medication. She testified she was "hearing things" at Chest of Hope but claimed she was not currently suffering from delusions. Mother denied being directed to get a second medication evaluation. Mother testified that she planned to have the minors reside with her at Family

6

Hope, which was part of the Chest of Hope program. Mother denied that Dr. Nelson diagnosed her with schizophrenia or any psychotic disorder.

The juvenile court found that a variety of approaches had been attempted to stabilize the family in response to homelessness, problems in school, and mother's paranoia and fears. The juvenile court noted that the issues surrounding mother and minors "had not been fully addressed, even though we have attempted a number of solutions" and mother's counselors reached the same conclusion that the family would not benefit from family therapy due to a lack of progress in maintaining mental health stability. The juvenile court found mother remained in denial regarding her mental health illness, was not taking any psychotropic medication, and continued to demonstrate ongoing patterns of paranoia and fear-based delusions. The juvenile court said mother had medication and mental health evaluations but provided "incomplete and incorrect information regarding her mental health state." The juvenile court found testimony and reports by counselors, the minors, and Chest of Hope demonstrated that mother's symptoms persisted throughout the dependency.

The juvenile court determined that the Chest of Hope program did not support mother's needs, and it did not find credible mother's claim that the minors could join her there. The juvenile court also noted that visitation remained supervised because of mother's inability to address her mental health problems. The juvenile court reasoned that, while the Agency should do more when sending clients for medical compliance, the client was responsible for meaningful participation in medication evaluations. The juvenile court concluded that the Agency's efforts were reasonable and stated it was prepared to provide mother and another father, father G., with family counseling as to G.G, E.G, and S.G, if mother's mental health stabilized and father G. continued counseling. The juvenile court then found by clear and convincing evidence that return of the minors posed a risk of detriment to them and it was in their best interest to terminate reunifications services for mother and father G.

7

DISCUSSION

Mother contends the juvenile court erred in finding the Agency made reasonable efforts to provide her services tailored to her needs and in terminating reunification services. Specifically, mother argues the Agency failed to offer her sufficient assistance with "the medication evaluation that it said was a precursor to family therapy with her children and a chance to reunify" and failed to provide her children adequate family counseling and sibling visitation. We disagree.

If the juvenile court does not return the minor to his or her parent at the review hearing, it "shall determine whether reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent . . . ." (§ 366.21, subds. (e)(8), see *id.,* (f)(1)(A).) A finding that reasonable services were offered or provided to a parent is supported when the record shows that the " 'supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult.' [Citation.] The 'adequacy of reunification plans and the reasonableness of the [agency's] efforts are judged according to the circumstances of each case.' [Citation.] Reunification services should be tailored to the particular needs of the family. [Citation.] The social services agency must make a 'good faith effort' to provide reasonable services that are responsive to each family's unique needs. [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*In re J.E.* (2016) 3 Cal.App.5th 557, 566, italics omitted.) In a case such as this, where a " 'mental illness is the starting point,' . . . 'then the reunification case plan . . . must accommodate the family's unique hardship.' " (*In re K.C.* (2012) 212 Cal.App.4th 323, 333.)

8

Here, the minors were removed from mother because untreated mental health problems affected her ability to care, supervise, and protect them. The key issues in mother's reunification plan were addressing the mental health problems and improving her ability to parent her children and provide a suitable home for them. In order to accommodate the unique hardship of mother's mental illness, she was required to complete a psychological evaluation and follow the recommendations. (See *In re K.C., supra*, 212 Cal.App.4th at pp. 329-330.) She was referred to services to achieve those ends, including many months of individual counseling. She did not complete some of the services and did not benefit from others. Dr. Nelson diagnosed mother with "unspecified schizophrenia spectrum and other psychotic disorder and parent-child relational problem," recommending a medication evaluation by a psychiatrist to further assess her mental health and determine if she would benefit from antipsychotic or other psychiatric medication.

The social worker's testimony evidenced that, contrary to mother's assertion, the Agency did maintain reasonable contact with her. Eventually, mother did obtain one medication evaluation but was not forthcoming about her symptoms and did not receive medications. She subsequently denied she had been diagnosed by Dr. Nelson with schizophrenia and failed to recognize the impact her behavior had on the minors and her hopes for reunification.

Although more might have been done to ensure mother's follow through on the medication evaluation, the evidence shows the Agency made reasonable efforts to identify and offer services relevant to address mother's issues which led to the removal of the minors. (*In re J.E., supra*, 3 Cal.App.5th at p. 566.) The social worker testified that the BHS medication evaluations were done based on "the client's disclosures of what symptoms they are experiencing." She testified that during the medication evaluation, mother denied any paranoia, auditory, or visual hallucinations. Finally, the social worker testified to continuing to encourage mother to return to BHS for another medication

9

evaluation. These were reasonable efforts. No more was required. The juvenile court did not err in finding the Agency offered mother reasonable services tailored to her specific needs.

Mother's argument that the minors were not provided reasonable services or sibling visitation also lacks merit. Like mother, the minors were referred to individual therapy. Although G.G and E.G initially refused to participate, all four of the minors ultimately participated in the services. G.G, E.G, and S.G also participated in family therapy with father G. Additionally, efforts were made to keep the minors together in foster care, but they demonstrated different behavioral and emotional needs. B.M.'s refusal to visit reinforced the conclusion that the minors required separate placements and individually focused services. The record shows the services provided to the minors were reasonably tailored to their specific needs.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                        /S/
                                              MAURO, J.


We concur:


      /S/
HULL, Acting P. J.


      /S/
HOCH, J.